**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Arenberg,<br><br>          Plaintiff,<br><br>v.<br><br>Michael Adu-Tutu, et al.,<br><br>          Defendants. | No. CV-14-01344-PHX-DLR<br><br>**ORDER** |

Before the Court is Defendant Arshad Tariq's motion for summary judgment. (Doc. 78.) Plaintiff David Arenberg has also filed a motion to strike, (Doc. 80), and a motion to withdraw the motion the strike, (Doc. 83). The motion for summary judgment is fully briefed, and neither party requested oral argument. For the reasons stated below, Tariq's motion for summary judgment is granted and Arenberg's motion to withdraw his motion to strike is granted.

## BACKGROUND

In November 2011, Plaintiff David Arenberg was serving a prison sentence in the custody of the Arizona Department of Corrections ("ADOC") at ASPC-Kingman. (Doc. 1, ¶¶ 4, 19.) During his sentence, Arenberg developed a "severe rash consisting of a thick mass of blistering welts around his waistline and on his genitals." (*Id.*, ¶ 10.) Defendant Arshad Tariq was a physician at ASPC-Kingman during the time Arenberg was housed there and saw Arenberg several times concerning the rash. (*Id.*, ¶ 7.)

On June 17, 2014, Arenberg filed suit under 42 U.S.C. § 1983 against Tariq and other prison medical staff alleging a violation of the Eighth Amendment. He also alleged claims of medical malpractice under Arizona law. On August 19, 2015, the Court dismissed Arenberg's medical malpractice claims for failure to obtain an expert and submit a preliminary expert affidavit in accordance with A.R.S. § 12-2603(f). (Doc. 64.) All other Defendants have been dismissed. (Docs. 50, 67.) As such, only the § 1983 claim against Tariq remains.

## LEGAL STANDARD

Summary judgment is appropriate when, viewing the facts in a light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a material fact. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

The sole remaining issue in this case is whether Tariq's treatment of Arenberg's medical condition amounts to deliberate indifference in violation of the Eighth

Amendment's proscription against cruel and unusual punishment. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a 'deliberate indifference to serious medical needs of prisoners.'" *Harrelson v. Dupnik*, 970 F. Supp. 2d 953, 980 (D. Ariz. 2013) (quoting *Estelle*, 429 U.S. at 104). "A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds).

Tariq argues that Arenberg's rash was not a serious medical condition and that, even if it was, he responded appropriately by treating the rash over the course of several months. He asserts Arenberg simply disagrees with the course of treatment and complains that his condition was not immediately cured. Assuming *arguendo* that Arenberg's rash constitutes a serious medical need, the Court finds Arenberg fails to establish that Tariq acted with deliberate indifference towards that medical need.

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference occurs when "prison officials deny, delay or intentionally interfere with medical treatment[.]" *Hutchinson v. United States*, 838 F.2d 290, 394 (9th Cir. 1988). It may also be "shown by the way in which prison physicians provide medical care." *Id.* "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi*, 391 F.3d at 1060.

Tariq first treated Arenberg on December 13, 2011, at which time he wrote a five-page evaluation, discussed a management program with Arenberg, ordered a "lab work up," and prescribed medication for the rash. (Doc. 79, ¶¶ 11, 12; Doc. 79-1, ¶ 7; Doc. 85, ¶¶ 11, 12.) Arenberg claims he did not agree with the management plan and wanted an outside consultation from a dermatologist. (Doc. 85, ¶ 85.) Tariq referred Arenberg to the Medical Review Committee for consideration of an outside consultation. (Doc. 79, ¶

1  13.)[1]

2  On January 5, 2012, Arenberg presented to Tariq for a second visit. (*Id.*, ¶ 19.)
3  Tariq discussed the lab work up with Arenberg and explained what the reports meant.
4  (*Id.*) On January 18, 2015, Arenberg saw Tariq for "wax in the ear canal." (*Id.*, ¶ 20.)
5  At this visit, Tariq renewed Arenberg's Lidex cream prescription for his rash. (*Id.*)

6  On January 26, 2012, Arenberg again saw Tariq. (*Id.*, ¶ 21.) Arenberg told Tariq
7  that he believed his rash was related to a food allergy. (*Id.*; Doc. 85, ¶ 21.) In response,
8  Tariq ordered a detailed food allergy test and injected Arenberg's lesions with Kenalog to
9  treat the symptoms. (Doc. 79, ¶ 21.) On February 6, 2012, Tariq reviewed the negative
10 food allergy tests with Arenberg, prescribed additional medication for the rash, and
11 changed Arenberg's chronic medications to avoid any drug allergies. (*Id.*, ¶ 22.)

12 On June 2, 2012, Tariq prescribed Arenberg "with permethrin cream for scabies as
13 re-treatment due to [Arenberg] wanting a second course of treatment for scabies." (Doc.
14 79-1, ¶ 15.) The last visit occurred on July 9, 2012, wherein Arenberg complained of a
15 rash on his waistline. (Doc. 79, ¶ 24.) Tariq prescribed another anti-scabies medication
16 and ordered Arenberg new clothes to avoid reinfection. (*Id.*) From July 7-10, 2012,
17 Arenberg was placed in the "medical observation unit" offsite at the Hualapai Prison to
18 further monitor his condition. (*Id.*, ¶ 26.)

19 Arenberg does not dispute that he received substantial treatment from Tariq.[2]
20 Indeed, the record reflects Tariq underwent a comprehensive treatment regimen. Tariq
21 saw Arenberg seven times in eight months and addressed Arenberg's concerns each time,
22 prescribing different medications and ordering several tests in an effort to cure the rash.
23 Tariq listened to Arenberg's concerns about allergies and scabies, and responded by
24 prescribing appropriate medications and tests. Tariq never declined to see Arenberg or

---

26 [1] The Medical Review Committee is responsible for analyzing and approving offsite referrals. (Doc. 79, ¶ 14.) If approved, the case is sent to a clinical coordinator who makes an appointment with the outside physician. (*Id.*, ¶¶ 15-16.)

28 [2] Arenberg acknowledged at his deposition that he received prescriptions and treatment from Tariq for his rash. (Doc. 79-1 at 11.)

declined to prescribe medication. In light of the above, a reasonable jury could only find Arenberg falls far short of establishing that Tariq acted with deliberate indifference to his medical needs. *See Toguchi*, 391 F.3d at 1060-61 (finding no deliberate indifference where physician was "consistently responsive to [the plaintiff's] medical needs").

However, Arenberg appears to dispute the medical reasonableness of Tariq's method of treatment. He asserts Tariq should have ordered an outside appointment with an allergist or a dermatologist. But "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi*, 391 F.3d at 1059 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Arenberg provides no evidence that Tariq's treatment was in violation of any medical standard of care, nor does he provide any expert opinion reviewing the reasonableness of the treatment. In addition, there is simply no evidence that Tariq consciously disregarded a risk to Arenberg's health. In fact, the record of treatment demonstrates otherwise.

Arenberg argues that Tariq should have immediately sent him for an appointment with an outside allergist/dermatologist. (Doc. 84 at 4.) He claims Tariq failed to refer him for such an appointment out of spite. Arenberg's previous facility had ordered an outside appointment, but he was transferred to ASPC-Kingman before the appointment occurred. (*Id.*) He claims Tariq declined to order an outside referral even though Arenberg had already been approved. (*Id.*) However, the medical director of ASPC-Kingman notified Arenberg that a new facility does not have to follow the procedures of the previous facility. (*Id.* at 7.) Arenberg provides no evidence that Tariq had any authority to overrule the decision of the medical director of ASPC-Kingman. And even if Tariq could have ordered an outside exam, there is no evidence that Tariq's refusal to do so amounts to deliberate indifference, especially in light of the substantial treatment he provided Arenberg over the course of several months. *See Ramirez v. Bartos*, No. CV 05-2291-PHX-MHM (HCE), 2007 WL 2725246, at *5 (D. Ariz. Sept. 17, 2007) (prison

nurse's failure to follow ADOC administrative policy regarding issuance of prescription sunglasses to inmate does not constitute deliberate indifference).

Arenberg also claims Tariq gave the order to place him in "quarantine" as retaliation. (Doc. 85, ¶ 26.) But there is no evidence that Tariq had the authority to "quarantine" Arenberg. The record indicates that he was placed in the "medical observation unit" in an effort to further diagnose the cause of his rash. Assuming *arguendo* that Tariq did order Arenberg to the "medical observation unit," no reasonable jury could conclude that such action amounts to deliberate indifference of Arenberg's medical needs. If anything, it gives rise to the inference that Tariq needed further observation of Arenberg in order to properly treat his rash.

Viewing the undisputed facts in a light most favorable to Arenberg, the Court finds that Tariq's treatment of Arenberg does not meet the high standard for deliberate indifference. Summary judgment is granted in favor of Tariq.

## MOTION TO WITHDRAW

Arenberg filed a motion to strike part of Tariq's exhibits filed in connection with the motion for summary judgment. (Doc. 80.) Arenberg then filed a motion to withdraw the motion to strike. (Doc. 83.) Tariq does not object. The motion to withdraw is granted, and the motion to strike is terminated.

**IT IS ORDERED** that Defendant's motion for summary judgment, (Doc. 78), is **GRANTED**, and Plaintiff's motion to withdraw motion to strike, (Doc. 83), is **GRANTED**. Plaintiff's motion to strike, (Doc. 80), is terminated. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 25th day of February, 2016.

Douglas L. Rayes
United States District Judge